NO. 07-07-0054-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 11, 2007

_____


WOODMARK AUSTIN LIMITED PARTNERSHIP, ET AL., APPELLANTS

V.

COINAMATIC, INC., APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY;

NO. C-1-CV-06-003931; HONORABLE J. DAVID PHILLIPS, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellants, Woodmark Austin Limited Partnership, d/b/a Woodmark Apartments, and Woodmark GP LLC, (Woodmark) perfected this appeal from the trial court's judgment in favor of Appellee, Coinamatic, Inc., in its suit for a writ of reentry and damages. Presenting five points of error, Woodmark contends (1) the trial court erred in admitting the

contract because it failed to comply with the Statute of Frauds; (2) the judgment for Coinamatic should be reversed because Woodmark established its Statute of Frauds defense as a matter of law; (3) the trial court erred in admitting the contract because it violated the Statute of Conveyances; (4) the judgment for Coinamatic should be reversed because Woodmark established its Statute of Conveyances defense as a matter of law; and (5) the trial court erred in determining that the contract created a lease.[1] We affirm.

## Background Facts

While the Woodmark Apartments were still under construction, on November 3, 1983, Michael Sternthal, as Vice President of Coinamatic, and Mark Goldberg, as owner of the Woodmark Apartments, entered into a fifteen year lease of the laundry area on the premises. The lease was subject to automatic renewal unless cancelled in writing by Coinamatic. It provided that Coinamatic would have the right of exclusive installation and operation of coin-operated laundry equipment. An addendum to the lease provided for prepayment of rent for the entire term of the lease of $13,518 in addition to the agreed monthly rental of $200. A Memorandum of Lease was signed that same date and recorded in the real property records of Travis County.

---

[1]Both at trial and on appeal, Woodmark contests the November 3, 1983 document as being a true lease and instead argues it constitutes a license which does not implicate a commercial landlord/tenant relationship governed by chapter 93 of the Texas Property Code.

2

On December 19, 2005, the Woodmark Apartments were sold to Woodmark Austin Limited Partnership, a Michigan limited partnership. The Special Warranty Deed recites in part "[t]his Deed is made and accepted expressly subject to the matters set forth in ***Exhibit B*** attached hereto and made a part hereof for all purposes." (Emphasis in original.) Paragraph 8 of Exhibit B recites "Memorandum of Lease dated November 3, 1983, executed by Coinamatic, Inc., and The Woodmark Apartments as recorded in Volume 8342, Page 810, Real Property Records of Travis County, Texas."

According to Sternthal's testimony, on May 4, 2006, he visited the laundry area to perform scheduled routine maintenance of equipment and collect money from the coin-operated machines. He found the premises locked and a sign posted on the door giving notice that the laundry room was closed. Sternthal inquired at the manager's office and was informed that the manager had been instructed to lock the laundry room and not allow anyone inside. Sternthal gained access to the laundry room with his key and collected money from the machines. On May 11, 2006, Sternthal again returned to the laundry room to find it was locked and notified the manager he would have to seek a writ of reentry.

Coinamatic instituted proceedings in justice court for a writ of reentry and also sought damages. The writ of reentry was granted, but was later dissolved, prompting Coinamatic to file a sworn complaint in county court for de novo review. Coinamatic again sought a writ of reentry and damages pursuant to the Texas Property Code. The trial court ordered that Coinamatic was entitled to a writ of reentry and actual damages in the amount

of $1,800. Upon Woodmark's request, the trial court filed findings of fact and conclusions of law. Woodmark now brings this appeal.

**Discussion**

Findings of fact entered in a case tried to the bench have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.–Houston [14th Dist. 1977, writ ref'd n.r.e.). However, the findings are not conclusive when a complete statement of facts appears in the record if the contrary is established as a matter of law or if there is no evidence to support the findings. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.–Houston [14th Dist.] 1985), writ ref'd n.r.e., 699 S.W.2d 199 (Tex. 1985) (per curiam).

Conclusions of law are reviewed de novo. *BMC Software Belgium*, *N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* at 794.

Before we can address Woodmark's arguments on Statute of Frauds and Statute of Conveyances, we must first determine whether the document in question was a true lease of a commercial tenancy or merely a license. Thus, logically, we address

Woodmark's fifth point of error first by which it alleges the trial court erred in determining that the contract created a lease.

## Lease or License?

By Finding of Fact No. 5, the trial court found that Coinamatic is the tenant under a 1983 lease agreement, and by Conclusion of Law No. 1 determined that the 1983 lease is a true lease of real property and not a mere license. Woodmark argues the 1983 document created at most, a revocable license. According to Woodmark, the document fails as a lease because (1) it lacks exclusivity of possession and (2) it does not contain definable real property.

### Exclusivity

By Finding of Fact No. 19, the trial court found that Coinamatic was in exclusive possession and use of the laundry room, a defined space with specific boundaries. Relying on *Brown v. Johnson*, 118 Tex. 143, 12 S.W.2d 543 (1929), Woodmark contends that the 1983 agreement cannot constitute a lease because it does not grant Coinamatic exclusive possession of the premises. Woodmark misconstrues the holding in *Brown.* In *Brown* the Supreme Court held that one of the essential elements of a valid lease is the *transfer* of exclusive possession, not the existence of exclusive possession. *Brown,* 12 S.W.2d at 545. To create a landlord-tenant relationship, no particular words are necessary, but it is indispensable that it should appear to have been the intention of one

5

party to dispossess himself of the right to exclusive possession of the premises and of the other to possess that right. *Id.; Brooks v. Blue Ridge Ins. Co.,* 677 S.W.2d 646 (Tex.App.–Amarillo 1984, writ refused n.r.e.).

The November 1983 agreement in question leased "all of the laundry areas on the premises" to Coinamatic, Inc. and further provided that Coinamatic, Inc. would have the "right of exclusive installation and operation of all coin-operated laundry equipment" on the premises. Furthermore, the agreement provided that the owner of the premises, as lessor, agreed "not to equip or provide washers or dryers in any other part of the above-described premises (including without limitation the individual apartment units therein) nor allow any other party to equip or provide same during the term of this Lease." From this language, it is clear that the lessor intended to dispossess himself of the right to exclusive possession of the premises for purposes of operating a coin-operated laundry, as well as the intent to grant that right to the lessee.

Definable Real Property

Relying on *Vallejo v. Pioneer Oil Company*, 744 S.W.2d 12 (Tex. 1988), Woodmark further contends that the "lease" fails to transfer an interest in definable real property. *Vallejo* is distinguishable. In *Vallejo,* Pioneer Oil Company, as lessee, entered into a "Lease and Operating Agreement" with Vallejo's predecessors in interest to install a self service gasoline operation on certain leased premises, to-wit: a convenience store. Vallejo contended that the agreement was a lease in name only and not binding upon him as the

6

new owner of the convenience store. The Supreme Court held that although the agreement contained many prerequisites of a valid lease, i.e., defined the extent and boundary of the property involved, provided a definite and agreed term, and fixed a definite and agreed price and manner of payment, it did not contain a granting clause reflecting an intention on the part of the lessor to transfer an interest in and possession of the described property. *Id*. at 14. The Court concluded that the agreement did not confer upon Pioneer a right to possess the premises described therein and thus, in the absence of a granting clause the agreement did not constitute a lease. *Id.*

Coinamatic responds that the 1983 document is a true lease. It consists of an identifiable space–a free standing building with two doors that could be locked when necessary. *Beutell v. United Coin Meter Co.*, 462 S.W.2d 334 (Tex.Civ.App.–Waco 1970, writ ref'd n.r.e.). Woodmark Apartments, through Goldberg, and Coinamatic, through Sternthal, contemplated a lease and referred to themselves as "Lessor" and "Lessee," respectively, when entering into the agreement. *See id*. at 336. More importantly, paragraph 1 of the agreement at issue is a granting clause conveying from lessor to lessee "all of the laundry areas on the premises described above . . . ."

Additionally, the document defines the leased premises as "all of the laundry areas on the premises described above" (to-wit: "the property commonly known as the Woodmark Apartments consisting of 160 rental units located at 1735 Rutland Drive, Austin, Texas"). *See Beutell*, 462 S.W.2d at 336 (concluding that the instrument leasing a specific

7

portion of the premises, namely a laundry room on the property "commonly known as Hilltop House, 10450 E. Northwest Hiway, Dallas, Texas," constituted a lease). We conclude the 1983 document conveyed an interest in definable real property and agree with the trial court that the November 3, 1983 document constituted a true lease. Having done so, we may now consider Woodmark's contentions that the lease violates the Statute of Frauds and the Statute of Conveyances.

## Statute of Frauds

By its first two points of error, Woodmark contends the trial court erred in admitting the lease because it failed to comply with the Statute of Frauds. We disagree. The Statute of Frauds requires that a lease of real estate for a term longer than one year be in writing and be signed by the person to be charged with the promise. Tex. Bus. & Com. Code Ann. § 26.01(a) and (b) (Vernon Supp. 2007). At trial, Woodmark objected on various grounds to admission of the lease for failure to comply with the Statute of Frauds. On appeal, Woodmark presents numerous arguments in support of its contention:[2]

- the "contract" offered as Exhibit No. 1 at trial was not the original and cannot constitute proof of the contents thereof;

---

[2]Woodmark presents its specific complaints without providing any authority in support thereof. *See* Tex. R. App. P. 38.1(h). The sole case cited by Woodmark supports the proposition that a lease of real estate for more than one year must be in writing, or at least some memorandum thereof must be in writing; however, Woodmark does not otherwise cite this Court to any authority to demonstrate how the writing in question fails to comply with that requirement. As such, Woodmark's argument presents nothing for review.

8

- the "contract" offered as Exhibit No. 1 was not complete;

- the "contract" is signed by Mark Goldberg and not by Woodmark or by someone lawfully authorized to do so;

- the real property description in the "contract" is not of definable real property as it provides:

    all of the <u>laundry areas</u> on the premises described above . . .

    and contains no legal description of the room;

- the real property description in the "contract" is not complete:

    the property commonly known as the Woodmark Apartments
    consisting of (160) rental units located at 1735 Rutland Drive,
    Austin, Texas . . . ;

- there was no evidence introduced of an assignment to Woodmark of the obligations under the "contract; and

- there was no evidence introduced of acceptance by Woodmark of the obligations under the "contract."


To the extent, if any, that Woodmark's brief presents anything for review, Sternthal testified he was unable to locate the original lease. He testified that the duplicate offered into evidence was a true and correct copy of the lease because he wrote it, executed it, and made copies of it. Under Rule 1003 of the Texas Rules of Evidence, a duplicate is admissible unless (1) a question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original. At trial, Woodmark did not raise any question on the authenticity of the duplicate or why admission of a duplicate would be unfair. Woodmark fails to show how the Lease (Plaintiff's Exhibit No. 1) and the Memorandum of Lease (Plaintiff's Exhibit No. 2) do not constitute a written memorandum of the complete agreement of the parties.

9

Woodmark next asserts that neither it nor anyone who was lawfully authorized to do so signed the lease. It argues that the lease was not assigned nor assumed by it. Where a prior owner is bound by a lease, a subsequent purchaser takes the property subject to the lease and is bound by it. *See 2616 South Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 355-56 (Tex.App.–Houston [14th Dist.] 2006, no pet.). Furthermore, as noted above, the Special Warranty Deed recited that the "[d]eed was made and accepted expressly subject to the matters set forth in ***Exhibit B*** attached hereto and made a part hereof for all purposes." Paragraph 8 of Exhibit B provides "Memorandum of Lease dated November 3, 1983, executed by Coinamatic, Inc. and The Woodmark Apartments as recorded in Volume 8342, Page 810, Real Property Records of Travis County, Texas." Accordingly, Woodmark accepted the property subject to the rights, if any, arising from that agreement.

Woodmark further argues that the lease does not contain a description of definable leased premises or, in the alternative, that the description is inadequate. A description in a conveyance is sufficient if it furnishes within itself or by reference to some other existing writing, the means or data by which the land may be identified with reasonable certainty. *See Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972). *See generally Oak Cliff Realty Group v. Mauzy*, 354 S.W.2d 693, 694-95 (Tex.Civ.App.–Fort Worth 1962, writ ref'd n.r.e.) (noting that "Room or Rooms Numbered 501, on the 5th floor of the building known as Jefferson Tower" was a sufficient description).

The Lease described the leased premises as "all of the laundry areas on the premises described above" (i.e. "the property commonly known as the Woodmark Apartments consisting of (160) rental units located at 1735 Rutland Drive, Austin, Texas"). This description alone is sufficient to satisfy the Statute of Frauds. *See Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 248-49 (1955). Furthermore, Exhibit A to the Memorandum of Lease described "the premises commonly known as the Woodmark Apartments, Austin, Texas" as follows:

> Rutland Square Two Lot 2-C. As recorded in Book 82, Page 168 of the Plat Records of the City of Austin, Travis County, Texas.

Woodmark has failed to show that the lease violated the Statute of Frauds. Points of error one and two are overruled.

## Statute of Conveyances

By its third and fourth points of error, Woodmark contends the trial court erred in admitting the lease because it violated the Statute of Conveyances. Again, we disagree. The Statute of Conveyances provides that a "conveyance . . . for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." Tex. Prop. Code Ann. § 5.021 (Vernon 2004). Woodmark argues that there is no evidence that (1) the lease was executed by it; (2) the lease was delivered by it; and (3) it assumed and accepted any obligations under the lease.

11

The lease at issue was in writing.  The original conveyor, Mark Goldberg, executed and delivered the lease as "Owner or acting with full authority as owner's agent, hereinafter called 'Lessor' of the property commonly known as the Woodmark Apartments."  Mindful of the proposition that a subsequent purchaser takes property subject to a lease or encumbrance, the Statute of Conveyances does not require that a subsequent purchaser sign and deliver the conveyance.  Woodmark has not demonstrated that the lease violated the Statute of Conveyances.  Points of error three and four are overruled.

**Conclusion**

Having overruled all five points of error, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

12